IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| FAIRHOLME FUNDS, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 13-465C |
| v. | ) | (Chief Judge Sweeney) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

DEFENDANT'S MOTION TO CERTIFY THE COURT'S DECEMBER 6, 2019
OPINION FOR INTERLOCUTORY APPEAL AND TO STAY FURTHER PROCEEDINGS

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

OF COUNSEL:

ELIZABETH M. HOSFORD                          KENNETH M. DINTZER
FRANKLIN E. WHITE, JR.                         Deputy Director
Assistant Directors                                  Commercial Litigation Branch
                                                            Civil Division
ERIC E. LAUFGRABEN                              U.S. Department of Justice
Senior Trial Counsel                               P.O. Box 480
                                                            Ben Franklin Station
MARIANA T. ACEVEDO                           Washington, DC 20044
RETA E. BEZAK                                      Telephone: (202) 616-0385
Trial Attorneys                                       Facsimile:  (202) 307-0973
                                                            Email:        Kenneth.Dintzer@usdoj.gov

February 21, 2020                                   Attorneys for Defendant

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

I.    Standard For Certification Under 28 U.S.C. § 1292(d)(2) ........................................... 2

II.   The December 6 Opinion Satisfies Section 1292(d)(2)'s Criteria For Certification ........... 3

      A.   The December 6 Opinion Involves Controlling Questions Of Law ..................... 3

      B.   Each Of The Controlling Questions Reflects A Substantial Ground For A
           Difference Of Opinion ......................................................................................... 5

           1.   There Is Substantial Ground For Difference Of Opinion As To
                Whether HERA's Succession Clause Permits Shareholder Derivative
                Claims Under An Implied Conflict-Of-Interest Exception ....................... 6

           2.   There Is Substantial Ground For Difference Of Opinion As To
                Whether FHFA's Conduct As Conservator Is Attributable To The
                United States ............................................................................................ 8

           3.   There Is Substantial Ground For Difference Of Opinion As To
                Whether Plaintiffs Stated A Plausible Implied-In-Fact Contract
                Claim ....................................................................................................... 10

      C.   Immediate Appeal Will Materially Advance The Ultimate Termination
           Of This Case And The Eighteen Related Shareholder Suits Pending In
           This Court ............................................................................................................ 13

III.  If The Court Certifies The December 6 Opinion, A Stay Of Further Proceedings
      Pending Resolution Of The Interlocutory Appeal Is Warranted ................................. 15

CONCLUSION ..................................................................................................................... 16

TABLE OF AUTHORITIES

Cases

*AT&T Co. v. United States*,
   33 Fed. Cl. 540 (1995) ............................................................................. 3

*Coast Fed. Bank, FSB v. United States*,
   49 Fed. Cl. 11 (2001) ................................................................. 2-3, 5, 13

*Colonial Chevrolet Co. v. United States*,
   106 Fed. Cl. 619 (2012) ........................................................................ 15

*D&N Bank v. United States*,
   331 F.3d 1374 (Fed. Cir. 2003) .............................................. 11, 12, 13

*First Hartford Corp. Pension Plan & Trust v. United States*,
   194 F.3d 1279 (Fed. Cir. 1999) ............................................................ 6-7

*Herron v. Fannie Mae*,
   861 F.3d 160 (D.C. Cir. 2017) ............................................................. 10

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96-1262, 1997 WL 758739 (S.D.N.Y. Aug. 12, 1997) ............... 3, 4

*In re United States*,
   678 F. App'x 981 (Fed. Cir. 2017) ...................................................... 15

*Ins. Co. of the W. v. United States*,
   No. 99-124, 1999 WL 33604131 (Fed. Cl. Dec. 10, 1999) ................. 14

*Johnson v. Burken*,
   930 F.2d 1202 (7th Cir. 1991) ............................................................... 4

*La. Mun. Police Emps. Ret. Sys. v. Fed. Hous. Fin. Agency*,
   434 F. App'x 181 (4th Cir. 2011) .......................................................... 6

*Laturner v. United States*,
   135 Fed. Cl. 501 (2017) ......................................... 2, 5, 13-14, 14, 16

*Mola Dev. Corp. v. United States*,
   516 F.3d 1370 (Fed. Cir. 2008) .............................................. 11, 12, 13

*Neb. Pub. Power Dist. v. United States*,
   74 Fed. Cl. 762 (2006) ............................................................. 3, 4, 6, 14

*O'Melveny & Myers v. FDIC*,
   512 U.S. 79 (1994) .................................................................................. 9

*Perry Capital LLC v. Mnuchin*,
   864 F.3d 591 (D.C. Cir. 2017) ........................................................ 7, 10

*Roberts v. Federal Housing Finance Agency*,
   889 F.3d 397 (7th Cir. 2018) ............................................................................. 7, 8

*Saxton v. Federal Housing Finance Agency*,
   245 F. Supp. 3d 1063 (N.D. Iowa 2017) ............................................................. 7

*Sisti v. Federal Housing Finance Agency*,
   324 F. Supp. 3d 273 (D.R.I. 2018) ...................................................................... 9

*Starr Int'l Co. v. United States*,
   856 F.3d 953 (Fed. Cir. 2017) ............................................................................. 3

Statutes

12 U.S.C. § 4617 ............................................................... 2, 6, 10, 12, 13, 16

28 U.S.C. § 1292 ........................................................................ 1, 2, 3, 16

Treatises

16 Charles A. Wright, *et al.*, *Fed. Practice & Procedure* § 3930 ................................ 2, 3, 4, 6, 13

Pursuant to Rule 7 of the Rules of this Court, the United States respectfully requests that the Court certify for interlocutory appeal its December 6, 2019 opinion (ECF No. 447), which granted in part and denied in part the United States' omnibus motion to dismiss. 28 U.S.C. § 1292(d)(2).  In addition, should the Court certify the December 6 opinion, we respectfully request that the Court stay further proceedings pending the Federal Circuit's resolution of our petition for interlocutory appeal and, if the petition is granted, the Federal Circuit's decision on that appeal.

## INTRODUCTION

The Court previously stated that the "logical next step[]" after deciding the United States' omnibus motion to dismiss should be "certification of questions to the Federal Circuit" for interlocutory appeal.  Hr'g on U.S. Mot. to Dismiss, Tr. 250:12-16, Nov. 19, 2019.  We agree. Indeed, this case is ideally suited for interlocutory appeal because it presents important legal issues, and could require lengthy, burdensome discovery that may be obviated or simplified by immediate appellate resolution.  Moreover, authoritative Federal Circuit rulings in this case will forge a clear path forward for the eighteen related shareholder suits pending in this Court, which assert identical or similar claims.[1]

Accordingly, we respectfully request that the Court authorize a petition for interlocutory appeal to the Federal Circuit by amending its December 6 opinion to include the following statement:

> The court finds that this order involves the following controlling questions of law with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from [this] order may materially advance the ultimate termination of the litigation.

---

[1] A list of these related shareholder suits is attached to this motion.

(1) Whether plaintiffs have standing to assert derivative claims notwithstanding the succession clause contained in the Housing and Economic Recovery Act of 2008 (HERA), 12 U.S.C. § 4617(b)(2)(A)(i).

(2) Whether actions by the Federal Housing Finance Agency (FHFA) as conservator for Fannie Mae and Freddie Mac are attributable to the United States such that the Court possesses subject-matter jurisdiction to entertain plaintiffs' derivative takings and illegal exaction claims.

(3) Whether plaintiffs' allegations that FHFA entered into an implied-in-fact contract with the Enterprises to operate the conservatorships for shareholder benefit fail as a matter of law.

Should the Court certify its December 6 opinion, we also request that the Court stay further proceedings pending the Federal Circuit's resolution of our petition for interlocutory appeal and, if the petition is granted, the Federal Circuit's decision on that appeal.

## ARGUMENT

### I.    Standard For Certification Under 28 U.S.C. § 1292(d)(2)

Section 1292(d)(2) authorizes this Court to certify an order for interlocutory appeal when (1) the order involves "a controlling question of law"; (2) "with respect to which there is a substantial ground for difference of opinion"; and (3) "an immediate appeal from that order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(d)(2); *Laturner v. United States*, 135 Fed. Cl. 501, 503-04 (2017). These factors "should be viewed together as the statutory language equivalent of a direction to consider the probable gains and losses of an immediate appeal." *Laturner*, 135 Fed. Cl. at 504 (*quoting* 16 Charles A. Wright, *et al.*, *Fed. Practice & Procedure* § 3930 (3d ed. Apr. 2017 update)).

Section 1292(d)(2) promotes judicial economy: interlocutory appeal may permit the Court and parties to avoid protracted and expensive litigation that could be resolved through immediate appellate review. *Coast Fed. Bank, FSB v. United States*, 49 Fed. Cl. 11, 14-15

(2001); *AT&T Co. v. United States*, 33 Fed. Cl. 540, 540 (1995); *see also In re Lloyd's Am. Trust Fund Litig.*, No. 96-1262, 1997 WL 758739, at *4 (S.D.N.Y. Aug. 12, 1997) (chief concern of interlocutory appeals is to promote the "institutional efficiency of the federal court system"). Thus, interlocutory appeal is especially useful in "big cases," such as this one, where discovery will consume substantial judicial, party, and non-party resources. *See* 16 Charles A. Wright, *et al.*, *Fed. Practice & Procedure* § 3930 (3d ed. updated Aug. 2019); *In re Lloyd's Am. Trust Fund Litig.*, 1997 WL 758739, at *4. *Cf. Starr Int'l Co. v. United States*, 856 F.3d 953, 987 (Fed. Cir. 2017) (Wallach, J. concurring) (trial court should resolve threshold questions of jurisdiction and justiciability at the outset of the case because it may permit the parties and the court to avoid costly discovery and trial).

As we demonstrate below, the December 6 opinion is an exemplary candidate for certification under section 1292(d)(2) because it involves controlling questions concerning plaintiffs' standing to bring derivative claims, the Court's subject-matter jurisdiction, and the viability of plaintiffs' implied-in-fact contract claim; immediate appellate review may obviate the need for further proceedings in this case, or, at a minimum, clarify their scope, and will provide the same guidance for the eighteen related shareholder suits pending in this Court.

II.     The December 6 Opinion Satisfies Section 1292(d)(2)'s Criteria For Certification

The Court should conclude that its resolution of our motion to dismiss satisfies section 1292(d)(2).

A.     The December 6 Opinion Involves Controlling Questions Of Law

A question of law is "controlling" when it "materially affect[s] issues remaining to be decided in the trial court." *Neb. Pub. Power Dist. v. United States*, 74 Fed. Cl. 762, 763 (2006). Although "challenges to jurisdiction [and] justiciability" typify controlling questions because

their reversal on appeal could dispose of a case entirely, *Fed. Practice & Procedure* § 3930, any legal question may be controlling so long as it is "serious to the conduct of the litigation, either practically or legally." *Johnson v. Burken*, 930 F.2d 1202, 1205-06 (7th Cir. 1991).  And, even if resolution of a legal question on immediate appeal would not determine the outcome of a case, the question may still be controlling if its resolution would have "precedential value for a large number of cases." *In re Lloyd's Am. Trust Fund Litig.*, 1997 WL 758739, at *4; *see also Neb. Pub. Power*, 74 Fed. Cl. at 764.

The December 6 opinion involves three controlling questions of law: (1) whether an implied conflict-of-interest exception to the succession clause contained in the Housing and Economic Recovery Act of 2008 (HERA) provides plaintiffs standing to pursue shareholder derivative claims; (2) whether actions by the Federal Housing Finance Agency (FHFA) as conservator for Fannie Mae and Freddie Mac (Enterprises) are attributable to the United States such that the Court possesses subject-matter jurisdiction under the Tucker Act to entertain plaintiffs' derivative takings and illegal exaction claims; and (3) whether plaintiffs plausibly alleged that FHFA entered into an implied-in-fact contract with the Enterprises to operate the conservatorships for shareholder benefit.[2]  The first two questions are plainly controlling because they concern threshold questions of standing and subject-matter jurisdiction.  If the Federal Circuit were to hold that HERA's succession clause contains no implied conflict-of-interest exception, plaintiffs would lack standing to bring derivative claims, resulting in the dismissal of this suit and the eighteen related shareholder suits pending in this Court.  Similarly, if the Federal Circuit were to hold that FHFA's actions as conservator are not attributable to the United States,

_____

[2] Because plaintiffs allege that FHFA *as regulator* entered into a pre-conservatorship contract with the Enterprises, we do not contest the Court's subject-matter jurisdiction to entertain plaintiffs' derivative implied-in-fact contract claims.

4

then the Court would lack subject-matter jurisdiction to consider plaintiffs' derivative takings and illegal exaction claims.  Given the potentially dispositive impacts of reversal by the Federal Circuit as to either ruling, they are plainly controlling questions of law.

Moreover, the Court's ruling on plaintiffs' implied-in-fact contract claim is a controlling question of law given its practical significance to this case.  Indeed, even if the Federal Circuit affirmed the Court's standing and subject-matter-jurisdiction rulings, reversal on the contract claim would save the Court and the parties significant resources because the contract claim likely involves burdensome discovery separate from the Third Amendment claims.

Finally, all three rulings constitute controlling questions of law for the independent reason that they affect eighteen related shareholder suits pending in this Court, including a putative class action.  Indeed, a primary rationale behind the omnibus motion-to-dismiss briefing was to permit the Court to resolve common legal issues among the complaints; the same rationale supports certification of the December 6 opinion because authoritative rulings from the Federal Circuit on these common legal issues would clarify which, if any, claims remain for discovery and trial.

B.      Each Of The Controlling Questions Reflects A Substantial Ground For A
          Difference Of Opinion

A "substantial ground for a difference of opinion" on a controlling question of law typically arises when the decision (1) is in tension with other decisions from other courts, or (2) involves a novel issue or one of first impression.  *Coast Fed. Bank*, 49 Fed. Cl. at 13; *see also Laturner*, 135 Fed. Cl. at 504 (although Court was confident that its ruling was correct, because the ruling presented a matter of first impression, the Court certified its order for interlocutory appeal).  Further, a substantial ground for difference of opinion does not require a "full blown intracircuit or intercircuit conflict[]"; rather, a "healthy tension" among decisions is sufficient.

*Neb. Pub. Power*, 74 Fed. Cl. at 764.  Ultimately, the inquiry is a flexible one, such that the "level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the questions in the context of the specific case . . . . [Thus,] certification may be justified at a relatively low threshold of doubt" when interlocutory appeal would otherwise benefit the Court and the parties.  *Fed. Practice & Procedure* § 3930.

As we demonstrate below, the December 6 opinion presents substantial ground for difference of opinion as to whether (1) HERA's succession clause permits shareholder derivative suits under an implied conflict-of-interest exception, (2) FHFA's actions as conservator are attributable to the United States, and (3) plaintiffs stated a plausible claim for breach of an implied-in-fact contract.

1.      There Is Substantial Ground For Difference Of Opinion As To Whether HERA's Succession Clause Permits Shareholder Derivative Claims Under An Implied Conflict-Of-Interest Exception

HERA's succession clause provides that FHFA "shall, as conservator or receiver, and by operation of law, immediately succeed to . . .  all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director of such regulated entity with respect to the regulated entity and the assets of the regulated entity."  12 U.S.C. § 4617(b)(2)(A)(i).  In its December 6 opinion, this Court recognized that HERA's succession clause "contains a prohibition on shareholder derivative suits because the right to assert such claims is transferred to FHFA [as conservator]."  Op. 43 (citing *Kellmer v. Raines*, 674 F.3d 848, 850 (D.C. Cir. 2012); *La. Mun. Police Emps. Ret. Sys. v. Fed. Hous. Fin. Agency*, 434 F. App'x 181, 191 (4th Cir. 2011)).  Indeed, the Court stated that if it "were writing on a blank slate, it would also conclude that Congress foreclosed shareholders from asserting derivative claims while the Enterprises are in conservatorship."  Op. 44.  Nonetheless, the Court viewed itself  bound by *First Hartford*

*Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1295 (Fed. Cir. 1999), a *Winstar* case in which the Federal Circuit recognized an implied conflict-of-interest exception to FIRREA's bar on derivative suits when enforcing a failed bank's pre-receivership contract rights would require FDIC as receiver to sue FDIC as regulator.

As the Court acknowledged, however, its ruling is in tension with numerous authorities holding that HERA's succession clause contains no conflict-of-interest exception that would permit shareholders to pursue derivative suits.  Op. 43-44 (citing cases).  For instance, in *Perry Capital LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017) (*Perry Capital II*), the D.C. Circuit rejected the shareholders' argument that Congress intended to permit derivative suits under an implied conflict-of-interest exception, even though HERA's succession clause was modeled on a similar provision in FIRREA.  *Perry Capital II*, 864 F.3d at 625 (citing *First Hartford*, 194 F.3d at 1295; *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1022-23 (9th Cir. 2001)).  The D.C. Circuit held that the succession clause's transfer of shareholder rights to FHFA is unambiguous and, in any event, the meaning of FIRREA's succession clause was not "so well settled" that the court "must conclude that Congress intended *sub silentio* to incorporate [an implied conflict-of-interest exception] into [HERA's succession clause]."  *Id.* (cited at Op. 44).  Accordingly, the D.C. Circuit affirmed the dismissal of plaintiffs' derivative claims.  *Id.*  In *Saxton v. Federal Housing Finance Agency*, 245 F. Supp. 3d 1063 (N.D. Iowa 2017), the Northern District of Iowa also concluded that HERA's succession clause was unambiguous, leaving no room for an implied conflict-of-interest exception.  *Saxton*, 245 F. Supp. 3d at 1079 (distinguishing *First Hartford*).

Similarly, in *Roberts v. Federal Housing Finance Agency*, 889 F.3d 397 (7th Cir. 2018), the Seventh Circuit stated that *First Hartford's* reasoning would not apply in a shareholder suit

concerning the Third Amendment.  *Roberts*, 889 F.3d at 409-10.  In *First Hartford*, "[t]he

Federal Circuit expressly limited its conflict-of-interest exception to situations 'in which a

government contractor with a putative claim of breach by a federal agency is being operated by

that very same federal agency.'"  *Roberts*, 889 F.3d at 409-10 (quoting *First Hartford*, 194 F.3d

at 1295).  Accordingly, the Seventh Circuit explained that "*First Hartford* thus stands for the

proposition that the accident of receivership should not serve to extinguish an asset (whether

seen as a contractual right or chose in action) of the bank."  *Id.*  Because *First Hartford's*

rationale is inapplicable to Third Amendment cases challenging "[FHFA's] decisions as

conservator once that conservatorship is underway," the Seventh Circuit determined that

plaintiffs' derivative suits were not cognizable under an implied conflict-of-interest exception.

*Id.* at 410.

Given these decisions concluding that HERA's succession clause contains no implied

conflict-of-interest exception, and that *First Hartford* addressed a factual situation that is not

presented here, there is substantial ground for difference of opinion on this question such that

Federal Circuit guidance is necessary to determine whether plaintiffs have standing to bring a

derivative suit.

        2.       There Is Substantial Ground For Difference Of Opinion As To Whether
               FHFA's Conduct As Conservator Is Attributable To The United States

Because plaintiffs could not establish subject-matter jurisdiction based on their

allegations against Treasury alone, Op. 14, the Court's subject-matter jurisdiction to entertain

plaintiffs' takings and illegal exaction claims hinges on whether FHFA's actions as conservator

are attributable to the United States.  The Court rejected plaintiffs' primary theories of

attribution—namely, that FHFA was Treasury's agent or that Treasury coerced FHFA.  Op. 18-

19.  Nonetheless, the Court attributed FHFA's actions as conservator to the United States on the

theory that FHFA did not "step into" the Enterprises' private shoes upon its appointment as conservator.  Op. 24.  In reaching this conclusion, the Court adopted reasoning from a District of Rhode Island decision, *Sisti v. Federal Housing Finance Agency*, 324 F. Supp. 3d 273 (D.R.I. 2018), which found that FHFA as conservator was a governmental actor for purposes of constitutional claims. .  Op. 24 (quoting *Sisti*, 324 F. Supp. 3d at 282-83).

Although the district court in *Sisti* acknowledged the Supreme Court's decision in *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1994), which held that a Government-receiver of a failed entity steps into the entity's private shoes, the district court nonetheless determined that *O'Melveny* was inapplicable to a Government-conservator, relying on a purported distinction between a receiver's duty (to the entity's creditors) and a conservator's duty (to the entity itself). *Id.* at 281-83.  In adopting *Sisti's* reasoning, this Court quoted the following passage:

> When FDIC is appointed receiver, it must dispose of the received entity's assets, resolving obligations and claims made against the entity.  Notably, "[i]n receivership, the receiver owes fiduciary duties to the creditors, which the corporation would otherwise owe to creditors during a period of insolvency."  It logically follows, then, that the receiver steps into the shoes of the private entity, because it assumes the fiduciary duties of that entity.
>
> Conservatorship, in contrast, serves a different function.  FHFA has described the purpose of conservatorship is "to establish control and oversight of a company to put it in a sound and solvent condition."  Conservators, unlike receivers, have a fiduciary duty running to the corporation itself.

Op. 24 (quoting *Sisti*, 324 F. Supp. 3d at 283).

But the *Sisti* court identified itself as an outlier in determining that FHFA as conservator is the United States.  *Sisti*, 324 F. Supp. 3d at 277 ("Numerous district courts, as well as the Sixth and D.C. Circuits, have concluded that [FHFA and the Enterprises] are not government actors for purposes of constitutional claims").  Indeed, the dominant view among Federal courts is that

FHFA as conservator is *not* a governmental actor for constitutional purposes.  *See*, *e.g.*, *Herron v. Fannie Mae*, 861 F.3d 160, 169 (D.C. Cir. 2017).  Because HERA provides that FHFA—by operation of law, upon the inception of conservatorship—succeeds to "all rights, titles, powers, and privileges" of the Enterprises, FHFA takes on the Enterprises' private status when it acts as their conservator.  12 U.S.C. § 4617(b)(2)(A)(i).  Thus, HERA "evinces Congress's intention to have the FHFA step into Fannie Mae's private shoes" and for FHFA to "shed[] its government character," not vice versa.  *Herron*, 861 F.3d at 169 (alteration in original) (citation omitted).

In *Perry Capital*, the D.C. Circuit considered a jurisdictional question analogous to the one presented here—whether FHFA as conservator is subject to suit as the United States under the Federal Tort Claims Act—and determined that FHFA is not because "[FHFA] steps into the shoes of the Companies and acts on their behalf."  *Perry Capital II*, 864 F.3d at 622-23.  Because the Enterprises, pre-conservatorship, were not subject to suit under the Federal Tort Claims Act, "neither is the FHFA when it is sued for a [post-conservatorship] action taken on [the Enterprises'] behalf—in this case, the Third Amendment."  *Id.* at 623.

Given that the Court's determination that FHFA's actions as conservator are attributable to the United States diverges from several circuit courts of appeals decisions, there is substantial ground for difference of opinion on this question such that Federal Circuit guidance is necessary to determine whether the Court possesses subject-matter jurisdiction to entertain plaintiffs' derivative takings and illegal exaction claims.

3.       There Is Substantial Ground For Difference Of Opinion As To Whether Plaintiffs Stated A Plausible Implied-In-Fact Contract Claim

The Court also concluded that plaintiffs sufficiently alleged that the Third Amendment violated an implied-in-fact contract formed in September 2008 between the Enterprises and FHFA in connection with the Enterprises' placement in conservatorship.  Op. 48.  Under

plaintiffs' theory, to secure the Enterprises' consent to the conservatorships, FHFA contractually obligated itself to "preserve and conserve" Enterprise capital for shareholder benefit and restore the Enterprises to a "sound and solvent" condition.  Second Am. Compl. ¶¶ 270, 280.  Plaintiffs allege that FHFA breached this implied-in-fact contract when it entered into the Third Amendment, and contend that they may sue derivatively to vindicate the Enterprises' purported contract rights.  The legal theory behind plaintiffs' contract claim, however, conflicts with Federal Circuit decisions, cited by the Court, which rejected claims that the Government's exercise of its statutory powers evidences an intent to form an implied-in-fact contract.  Op. 48 (citing *D&N Bank v. United States*, 331 F.3d 1374, 1377-79 (Fed. Cir. 2003); *Mola Dev. Corp. v. United States*, 516 F.3d 1370, 1378 (Fed. Cir. 2008)).

The Government's mere "performance of its regulatory or sovereign functions" is insufficient to show a "clear indication of intent to contract" because those actions reflect "the regulatory function of an agency and say[] nothing about the role of the agency as an independent contracting body[.]"  *D&N Bank*, 331 F.3d at 1380.  For instance, in *D&N Bank* and *Mola Development*, the Federal Circuit determined that the Government's conduct—approval of bank mergers—reflected its regulatory responsibilities; thus, mere negotiations in connection with those mergers were insufficient to show the Government's intent to enter into implied-in-fact contracts regarding goodwill accounting.  *D&N Bank*, 331 F.3d at 1378-79; *Mola Dev. Corp.*, 515 F.3d at 1378; *see also* Op. 48 (citing *Suess v. United States*, 535 F.3d 1348, 1362-63 (Fed. Cir. 2008) (regulatory approval of bank merger did not evidence a contract guaranteeing an accounting method used in the merger)).

The Federal Circuit explained that to establish an implied-in-fact contract, the banks needed "something more," such as evidence of negotiations concerning the specific contract

promise that the banks sought to enforce or agency resolutions or correspondence memorializing that specific contract promise.  *D&N Bank*, 331 F.3d at 1377-78; *see also Mola Dev. Corp.*, 515 F.3d at 1378-80.

In this case, plaintiffs' alleged implied-in-fact contract claim is even weaker than the implied-in-fact contract claims which the Federal Circuit rejected in *D&N Bank* and *Mola Development* because plaintiffs here allege only that FHFA promised to exercise its statutory authority.  Plaintiffs contend that "FHFA and Treasury offered, and the [Enterprise boards] accepted, a conservatorship that would aim to 'preserve and conserve [Enterprise] assets and property' and restore [the Enterprises] to a 'sound and solvent condition.'"  Second Am. Compl. ¶¶ 270, 280.  But FHFA's power as conservator to "preserve and conserve" Enterprise assets, and restore the Enterprises to a "sound and solvent" condition comes from Congress, not from a contract.  *Compare id.*, *with* 12 U.S.C. § 4617(b)(2)(B)(iv), (D)(i).  Indeed, throughout the complaint, plaintiffs repeatedly characterize these powers as congressional "mandates," not contractual duties.  Second Am. Compl. ¶¶ 58-60.

Importantly, the Court agreed that FHFA's exercise of its statutory conservator powers alone would not show mutuality of intent to form an implied-in-fact contract.  Op. 48. Nonetheless, the Court determined that allegations of "bargaining" were sufficient to allege a plausible contract claim.  Op. 48.  However, the complaint contains no such allegations.  Rather, the complaint argues that the Government forced the Enterprises into conservatorship against their will: "the Companies' directors were confronted with a Hobson's choice: agree to conservatorship, or they would face 'nasty lawsuits' and Treasury would refuse to provide the Companies with any capital if they needed it."  Second Am. Compl. ¶ 64.  Indeed, plaintiffs contend that the Enterprises consented to the conservatorships because the Government

"threaten[ed] to seize them if they did not acquiesce and . . . inform[ed] them that the [Government] had already selected new CEOs and had teams ready to move in and take control." *Id.*

Although plaintiffs invoke various contract terms—*e.g.*, "offer," "acceptance", "consideration"—the complaint contains no facts supporting those conclusions.  *See id.* ¶¶ 269-74, 279-84.  At best, plaintiffs allege the Enterprises "understood" that FHFA would operate the conservatorships for "the benefit of all stakeholders, including private shareholders," *id.*, but the complaint neither identifies any specific promise from FHFA on this point, nor describes any "bargaining" at all between FHFA and the Enterprise boards about the operation of the conservatorship—all of which are necessary to allege an implied-in-fact contract.  *See D&N Bank*, 331 F.3d at 1378-79; *Mola Dev. Corp.*, 515 F.3d at 1378.

These cases demonstrate that there is substantial ground for difference of opinion on this question such that Federal Circuit guidance is necessary to determine whether plaintiffs stated a plausible claim for breach of an implied-in-fact contract.

C.      Immediate Appeal Will Materially Advance The Ultimate Termination Of This Case And The Eighteen Related Shareholder Suits Pending In This Court

An interlocutory appeal "materially advance[s] the ultimate termination of [a] case" when immediate appellate resolution may save judicial and party resources by resolving what, if any, claims may proceed.  *Coast Fed. Bank*, 49 Fed. Cl. at 14 (citing *Northrop Corp. v. United States*, 27 Fed. Cl. 795, 800-01 (1993)).  In assessing whether an interlocutory appeal will "materially advance the ultimate termination of a case," courts consider a variety of factors, including the appeal's potential to accelerate or simplify trial-court proceedings, the burdens associated with discovery, and the potential impact of appellate resolution on related cases.  *Fed. Practice & Procedure* § 3930; *see also Laturner*, 135 Fed. Cl. at 505-06 (certifying order, in part, when an

immediate appeal could obviate contentious and protracted discovery); *Neb. Pub. Power*, 74 Fed. Cl. at 764 (granting motion to certify in spent nuclear fuel case, in part, because interlocutory appeal will "materially advance not only this case," but the "dozens of spent nuclear fuel cases pending before this court."); *Ins. Co. of the W. v. United States*, No. 99-124, 1999 WL 33604131, *3 (Fed. Cl. Dec. 10, 1999) (certifying order, in part, because appellate resolution would affect other cases pending before the court).  Indeed, in *Laturner*, the Court certified its order, in part, because it anticipated that the parties would be more likely to cooperate in discovery if they obtained an authoritative determination from the Federal Circuit on the viability of plaintiff's claim.  *Laturner*, 135 Fed. Cl. at 506.

In this case, interlocutory appeal would materially advance the litigation by permitting the Court and the parties to obtain definitive rulings on plaintiffs' standing, the Court's subject-matter jurisdiction, and the viability of plaintiffs' implied-in-fact contract claim before embarking on the time-consuming and expensive process of litigating plaintiffs' claims to judgment.  First, a Federal Circuit determination that plaintiffs may not pursue derivative claims under HERA's succession clause would require dismissal of the complaint in its entirety.  Second, a Federal Circuit determination that FHFA's actions as conservator are not attributable to the United States would require dismissal of plaintiffs' takings and illegal exaction claims.  Third, a Federal Circuit determination that plaintiffs failed to state a plausible implied-in-fact contract claim would require dismissal of that claim.

Thus, reversal of any of the Court's controlling legal rulings would materially advance resolution of this case by ending it entirely or, at a minimum, clarifying its scope.  Moreover, the Federal Circuit's rulings will forge a clear path forward in the eighteen related shareholder suits pending in this Court, clarifying which, if any, claims survive.

Further, we anticipate that this case will present unique discovery burdens given that plaintiffs likely will, again, demand documents protected by governmental privileges and seek depositions of former officials from the highest levels of the Federal Government.  Such governmental-privilege disputes have already required time-consuming and complex collateral proceedings in this case.  *See In re United States*, 678 F. App'x 981 (Fed. Cir. 2017) (granting in part and denying in part the Government's petition for a writ of mandamus with respect to privilege rulings).  Should merits discovery proceed, additional discovery disputes are not difficult to foresee.  Moreover, because the complaint contains multiple references to at least two former Treasury Secretaries and a former FHFA Director, we anticipate that plaintiffs will seek to depose these individuals, and perhaps call them at trial.  *See*, *e.g.*, Second Am. Compl. ¶¶ 45, 64, 70, 73, 148 (Secretary Paulson); ¶¶ 142, 143, 147 (Secretary Geithner); ¶¶ 6, 45, 59, 65, 117 (Director Lockhart).  An interlocutory appeal could eliminate the need for depositions of such former high-level officials.  *See Colonial Chevrolet Co. v. United States*, 106 Fed. Cl. 619, 621 (2012) (noting that an interlocutory appeal could materially advance the termination of the litigation, in part, by preempting depositions of senior Government officials).

In sum, because review by the Federal Circuit could fully resolve or at least simplify this case and the eighteen related shareholder suits pending in this Court, certification of the December 6 opinion is warranted.

III.    If The Court Certifies The December 6 Opinion, A Stay Of Further Proceedings Pending Resolution Of The Interlocutory Appeal Is Warranted

Should the Court certify the December 6 opinion for interlocutory appeal, the United States respectfully requests that the Court stay further proceedings pending resolution of our petition for interlocutory appeal and, if granted, the Federal Circuit's decision on that appeal. Proceeding with discovery in this case while the Federal Circuit resolves controlling legal

questions would subject the parties and the Enterprises to costly and potentially-needless discovery that an interlocutory appeal is precisely designed to avoid. *Laturner*, 135 Fed. Cl. at 506 (granting stay for the same judicial-economy reasons that merited certification of its order for interlocutory appeal).

<u>CONCLUSION</u>

For these reasons, the Court should certify the December 6 opinion for interlocutory appeal by amending the order to add the following statement pursuant to 28 U.S.C. § 1292(d)(2):

> The Court finds that this order involves the following controlling questions of law with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.
>
> (1)   Whether plaintiffs have standing to assert derivative claims notwithstanding the succession clause contained in the Housing and Economic Recovery Act of 2008 (HERA), 12 U.S.C. § 4617(b)(2)(A)(i).
>
> (2)   Whether actions by the Federal Housing Finance Agency (FHFA) as conservator for Fannie Mae and Freddie Mac are attributable to the United States such that the Court possesses subject-matter jurisdiction to entertain plaintiffs' derivative takings and illegal exaction claims.
>
> (3)   Whether plaintiffs' allegations that FHFA entered into an implied-in-fact contract with the Enterprises to operate the conservatorships for shareholder benefit fail as a matter of law.

In addition, if it certifies the December 6 opinion, the Court should also stay further proceedings pending the Federal Circuit's resolution of our petition for interlocutory appeal and, if the petition is granted, the Federal Circuit's decision on that appeal.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General


s/Robert E. Kirschman, Jr.
ROBERT E. KIRSCHMAN, JR.
Director


| | s/Kenneth M. Dintzer |
|---|---|
| ELIZABETH M. HOSFORD | KENNETH M. DINTZER |
| FRANKLIN E. WHITE, JR. | Deputy Director |
| Assistant Directors | Commercial Litigation Branch |
| | Civil Division |
| ERIC E. LAUFGRABEN | U.S. Department of Justice |
| Senior Trial Counsel | P.O. Box 480 |
| | Ben Franklin Station |
| MARIANA T. ACEVEDO | Washington, DC 20044 |
| RETA E. BEZAK | Telephone: (202) 616-0385 |
| Trial Attorneys | Facsimile:  (202) 307-0973 |
| | Email:      Kenneth.Dintzer@usdoj.gov |
| | |
| February 21, 2020 | Attorneys for Defendant |

<u>List Of Fannie Mae and Freddie Mac Shareholder Suits Pending In The Court Of Federal Claims</u>

1.     *Washington Federal v. United States*, No. 13-385C (Fed. Cl.)

2.     *Fairholme Funds, Inc. v. United States*, No. 13-465C (Fed. Cl.)

3.     *Cacciapalle v. United States*, No. 13-466C (Fed. Cl.)

4.     *Fisher v. United States*, No. 13-608C (Fed. Cl.)

5.     *Arrowood Indemn. Co. v. United States*, No. 13-698C (Fed. Cl.)

6.     *Reid v. United States*, No. 14-152C (Fed. Cl.)

7.     *Rafter v. United States*, No. 14-740C (Fed. Cl.)

8.     *Owl Creek Asia I L.P. v. United States*, No. 18-281C (Fed. Cl.)

9.     *Akanthos Opportunity Fund L.P. v. United States*, No. 18-369C (Fed. Cl.)

10.    *Appaloosa Inv. L.P. v. United States*, No. 18-370C (Fed. Cl.)

11.    *CSS LLC v. United States*, No. 18-371C (Fed. Cl.).

12.    *Mason Capital L.P. v. United States*, No. 18-529C (Fed. Cl.)

13.    *683 Capital Partners, L.P. v. United States*, No. 18-711C (Fed. Cl.)

14.    *Patt v. United States*, No. 18-712C (Fed. Cl.)

15.    *Wazee Street Opportunities Fund IV LP v. United States*, No. 18-1124 (Fed. Cl.)

16.    *Highfields Capital I LP v. United States*, No. 18-1150C (Fed Cl.)

17.    *CRS Master Fund LP v. United States*, No. 18-1155C (Fed. Cl.)

18.    *Perry Capital LLC v. United States*, No. 18-1226C (Fed. Cl.)

19.    *Quinn Opportunities Master LP v. United States*, No. 18-1240C (Fed. Cl.)